Schwab, J.
The grand jury of Hamilton county in the January term of this year returned an indictment against John J. Feldhaus, Jr., charging him with the failure to comply with a lawful order of the Ohio Milk Market Commission. The indictment reads as follows:
“The grand jurors of the county of Hamilton, in the name and by the authority of the state of Ohio, upon their oaths present that John J. Feldhaus, Jr., on or about the sixth day of February in the year nineteen hundred and thirty-four, aforesaid, being then and there a milk distributor in the county of Hamilton and state of Ohio, did unlawfully and wilfully fail, neglect and refuse to comply with a lawful order of the Ohio Milk Marketing Commission of the state of Ohio, heretofore issued and delivered to said John J. Feldhaus, Jr., which said order is in the words and figures following, to-wit:
‘Official Order No. 51.
Ohio Milk Marketing Commission.
To: John J. Feldhaus, Jr..
3rd and Benson Streets,
Reading, Ohio.
You are hereby notified that the Ohio Milk Marketing Commission by virtue of Section 1080-5, General Code, has this 2nd day of February, 1934, empowered and authorized J. 0. Winters and Charles S. Smith, employees of the Commission, to inspect all books, papers, records or documents of ,your company, including those pertaining to weights of milk received from producers and payments to producers for the months of October, November, December, 1933, and January, 1934, butterfat tests of milk received and route settlement records showing sales of milk by classification, as authorized by law.
All information procured by virtue of the examination of the said documents and records will be for the exclusive use and information of the Ohio Milk Marketing Commission and will not be open to the public.
Ohio Milk Marketing Commission.
(Signed) Harry N. Ballman
(Signed) T. Kline Hamilton
(Signed) W.. J. Ramseyer.
(Ohio Milk Marketing Commission Seal)
Dated at Columbus, Ohio, this second day of February, 1934.
*274 State of Ohio,
Franklin County:
This is to certify that the above order is a true and correct copy of an order duly promulgated by the Ohio Milk Marketing Commission at its office at Columbus, Ohio, on the 2nd day of February, 1934.
(Signed) C. G. McBride,
Executive Secretary.’
contrary to the form of the statute in such case made and provided, and against the peace and dignity of the state of Ohio.
(Signed) Louis J. Schneider,
Prosecuting Attorney,
Hamilton County, Ohio.”
To this indictment the defendant has filed a motion to quash, and a demurrer on the ground, among others, that the provisions of Section 1080-5, General Code violates the provisions of Art. I, Sections 10 and 14, of the Ohio Constitution compelling the defendant to be a witness against himself. The prosecuting attorney and counsel for the defendant have made the following stipulation:
“It is hereby stipulated that John J. Feldhaus, Jr., as an individual operates a dairy, and that his business is not incorporated.”
This indictment was drawn under Section 1080-6, General Code, which provides as follows:
“Whoever, being a m'ilk dealer, as defined in this act, engages in business in any manner as such, except as provided in Subsection (a) of Section 5 (Section 1080-5, General Code), without being licensed as provided in this act, or wilfully makes any false statement in his application for a license, filed pursuant to this act or wilfully disobeys or fails to observe or comply with any lawful rule or order of the commission, prescribed under the provisions of this act, shall be guilty of a misdemeanor and upon conviction thereof shall be fined not more than one hundred dollars or imprisoned not to exceed six months, or both. Each day on which such milk dealer engages in business without being so licensed shall be deemed a separate offense.”
This section is a part of the act creating The Ohio Milk Marketing Commission set forth in Sections 1080-1 to 23, ine., General Code. Under Section 1080-5 the commission is given the power, under Sub-section (c) as follows:
“To have access to and at all reasonable hours enter any place where milk is being produced, processed, stored, bottled or sold. Such power may be exercised by any mem *275 ber of the commission, or any employe designated for the purpose; and any such member or designated employe shall also have power upon order of the commission to inspect all books, papers, records or documents at any place within the state, for the purpose of ascertaining facts to enable the commission to administer this act.”
The right thus conferred upon the commission to inspect all books, papers, records or documents of any milk dealer, it is contended, is an invasion of the rights of privacy and violates Article I, Sections 10 and 14 of the Ohio Constitution which provides:
Section 10:
“No person shall be compelled in any criminal case to be a witness against himself.”
Section 14:
“The right of the people to be secure in their persons, houses, papers and possessions, against unreasonable searches and seizures shall not be violated.”
Section 1080-18, General Code provides as follows:
“The commission may, by uniform rules and regulations, require licensees to keep such records showing facts pertinent and material to the enforcement of the provisions of this act as the commission may prescribe, and from time to time make and file verified reports on forms prescribed by the commission on all matters on which records are required to be kept, together with such other information or facts as may be pertinent and material. All such information as may be furnished to or procured by the commission in pursuance of the provisions of this act shall be for the exclusive use and information of the commission in the discharge of its official duties and shall not be open to the public or be used in any court in any action or proceeding pending therein unless the commission is a party to such action or proceeding; but such information may be consolidated in statistical tables and published by the department in statistical form without diclosing details of information furnished by any person, for the use and information of other state departments and the public. Any member or employee of the commission and any person assisting the commission in the administration of this act who shall wilfully divulge any information secured while in the employ of the commission in respect to the transactions, property, files, records or papers of the commission or in respect to the business or mechanical, chemical or other industrial processes of any person, to any person other than members of the commission or the *276 superior of such employee of the commission, or when called upon to testify in any action or proceeding In any court, shall be fined not less than one hundred dollars nor more than one thousand dollars.”
By the enactment of this section the legislature has recognized its constitutional limitations and has made an effort to grant immunity.
It is the contention of the defendant that nothing but an absolute and unqualified immunity from prosecution can compel one to testify against himself or open his books for inspection. In support of this contention he cites the case of Mouser v. Public Utilities Commission of Ohio in 124 O. S., at page 425, the syllabus of which reads:
“Pursuant to the authority conferred by Section 614-84 and 614-6, General Code, the Public Utilities Commission cited the plaintiffs in error to appear before it for the purpose of eliciting the fact whether the witness was engaged in operating a motor transportation company in violation of law. The witness refused to answer any of the questions propounded in respect thereto, claiming his constitutional protection under the provisions of the state and federal constitutions. Held: Section 553, General Code, confers upon such witness full and complete immunity by preventing prosecution or subjection to penalties against him ‘on account of any transaction, matter or thing concerning which he may have testified.’ Since that section affords the witness such absolute immunity, it deprives him of his constitutional right to refuse to answer; and for so refusing he may be punished for contempt.”
In that case the original proceedings were instituted before the Public Utilities Commission for the purpose of ascertaining whether or not the plaintiffs in error had violated the motor transportation act in failing to secure a certificate of public convenifence and ,necessity therefor from the commission, ánd it was the purpose of the commission to elicit from the plaintiffs in error information touchng upon that feature. Under the provisions of Section 614-100, General Code, a failure to comply with the provisions of the motor transportation act made them guilty of a misdemeanor. The plaintiffs in error, on the ground of self-incrimination, refused to answer the questions propounded by a member of the commission, and relied upon two constitutional guaranties, one being the Fifth Amendment of the Federal Constitution providing—
*277 “That no person shall be compelled in any criminal case to be a witness against himself,”
and Article I, Section 10 of the Ohio constitution providing that—
“No person shall be compelled in any criminal case, to be a witness against himself.”
Judge Jones writing the opinion of the court in this case called attention, however, to Section 553, General Code, which is a part of the chapter relating to the public utilities commission, wherein it was provided, among other things, that no person shall be excused from testifying “on the ground that the testimony or. evidence * * * * may tend to incriminate him or subject him to penalty or forfeiture, but no person having so testified shall be prosecuted or subjected to a penalty or forfeiture for, or on account of, any transaction, matter or thing concerning which he may have testified.”
Judge Jones then observes were it not for the immunity granted by these sections of the code, the plaintiffs in error could have successfully relied upon the privilege against, self-incrimination guaranteed by the two constitutional sections above referred to.
A number of federal decisions are cited in this opinion, among them is the case of Counselman v. Hitchcock, 142 U. S., 547, wherein it was held that no statute which leaves the party or witness subject to prosecution after he answers the questions put to him can have the effect of supplanting the constitution. It was also held in view of the constitutional provisions that the legislative enactment, to be valid, must afford absolute immunity against future prosecution against which the questions relate.
In the case of Arndstein v. McCarthy, 254 U. S., p. 71, wherein it was held • that the constitutional protection against self-incrimination was not removed by the limited provisions of the Bankruptcy Act which simply provides:
“No testimony given to him (bankrupt) shall be offered in evidence against him in any criminal proceeding.”
It was held in effect that this statute was too narrow and not sufficiently broad to give the witness absolute and com-' píete immunity under the Fifth Federal Amendment.
In the case of Hale v. Henkel, 201 U. S., p. 43, the .court construed the federal immunity act providing
*278 “that no person shall be prosecuted or subjected to any penalty" or forfeiture for or on account of any transaction, matter or thing concerning which he may testify or produce evidence.”
Held: that the statute afforded absolute immunity against prosecution for the offense to which the questions related and deprived the witness of his constitutional right to refuse to answer.
Judge Jones concluding his opinion observes as follows:
“Since the immunity granted by the state is absolute, and sufficiently comprehensive to prevent prosecution of the witness and to prevent his subjection to penalties on account of the transactions and matters or things inquired of the witness, we are of the opinion that the several plaintiffs in error were not entitled to the benefit of their claimed constitutional guaranties, and that therefore each became guilty of contempt in refusing to answer the questions propounded to him.”
Thus it will be observed that the immunity section adopted by the federal government is almost verbatim the immunity section of the Utilities Act of Ohio.
The constitutionality of the Milk Marketing Commission Act as a whole has heretofore been established by the Court of Appeals of Cuyahoga county on March 26, 1934, in the case of Clover Meadow Creamery Co., et al. v. National Dairy Products Co., et al, 40 O. L. R. 57 [O. L. B. & R. 4-23-34], but no where in the state has the court been able to find that the same question, as presented to this court, has been raised. '
Section 1080-21 of this act provides as follows:
“The sections and parts of sections included in this act are hereby declared to be independent sections and parts of sections; if any such section or part of section shall be held invalid, such holding shall not affect the remainder of this act, nor the context in which such part of section so held invalid may appear, excepting to the extent that an entire section or part of section may be inseparably connected in meaning and effect with the section or part of section to which such holding shall directly apply. The intention and purpose of this act as hereinbefore defined extends to the regulation of the milk marketing industry of this state to the full extent permitted by the constitutions of this state and of the United States as applied to legislation enacted under the emergency conditions described in this act.”
*279 The question, therefore, presented is whether or not Section 1080-16 of this act furnished the defendant with absolute immunity from criminal prosecution. If it does, then his refusal to submit to an examination of his books cannot be based upon the constitutional privilege. If it does not then the order of the commission directing an examination and inspection of all his books, papers and documents is in violation of Article I, Section 10 of the Ohio Constitution and the indictment based upon the refusal to comply with such order is void.
In a careful reading of Section 1080-18, General Code, it will be observed that
“all such information as may be furnished to or procured by the commission, pursuant to the provisions of this act, shall be for the exclusive use and information of the commission in the discharge of its official duties and shall not be open to the public or used in any court action or proceeding pending therein unless the commission is a party to such action or proceeding.”
By the use of the word “pending” doubt as to the legislative intent arises. The language thus employed is susceptible of an interpretation which would hold that the use of the information was barred only in such cases as were pending at the time the information was received, or, at the time the act creating the commission became effective.
While it is provided in this act that any member or employee of the commission may be punished for revealing any information thus obtained, it is further provided that the individual or individuals may testify when called upon in any action or proceeding in court. Let us assume that the prosecuting attorney knowing of an examination made by The Ohio Milk Marketing Commission of books of the defendant called upon the commission to relate its finding in open court. Nothing in this section would prevent the commission from using the information obtained by an examination of the books of the defendant to obtain from other sources information upon which an indictment might -be based. An examination of the books may disclose violations of other lawful orders of the commission which could be prosecuted.
The power under this act given to the commission is not merely to examine the books of the dealer in milk, relat *280 ing to the purchase, sale or distribution of milk, but is all inclusive and places all the books of the dealer under the scrutiny of the commission. The commission being an arm of the state government may be well be considered a party to any criminal prosecution it initiates..
Under Section 1080-7 of this act every dealer must have a license from the commission to do business, and under the provisions of Section 1080-8 the commission has the power to revoke a license, among other things, upon the ground “that a licensee has failed, neglected or refused to comply with any lawful order, rule or regulation of the commission.” The commission thus has the power, without the intervention of the criminal action to regulate the business of every milk dealer in the state.
In the case of Rembrandt v. the City of Cleveland, 28 Ohio App., p. 4, it was held that the
“ordinance of the city of Cleveland requesting driver or operator of a vehicle involved in accident, under penalty of fine or imprisonment, to make full report to police of accident to be unconstitutional because in violation of Article I, Section 10,' Ohio Constitution and the Fifth Amendment to the U. S. Constitution, providing that no person shall be compelled to be a witness against himself in a criminal case.”
The defendant must furnish to the commission all material and pertinent information concerning the conduct of his business, as the commission may require, or suffer a revocation of his license to do business. Notwithstanding this if the defendant desires to stand upon his constitutional right to privacy, that right must be respected as long as the bill of rights remains a part of the constitution of Ohio.
The court therefore reaches the conclusion that Section 1080-18, General Code, while it attempts to grant immunity does not give to the defendant “absolute immunity from criminal prosecution.”
It therefore follows that Sections 1080-5 and 6, insofar as they attempt to make a criminal offense of the refusal of a milk dealer to comply with an order of the commission for .an inspection of his books violate Article I, Sections 10 and 14 of the Ohio Constitution.
The other questions raised by the motion to quash and the demurrer need not be decided for the demurrer to the indictment will be sustained for the reasons stated.